**PARKE–CHAPLEY CONSTRUCTION COMPANY, an Illinois Corporation, Plaintiff–Appellant,**

v.

**Thomas F. CHERRINGTON, et al., Defendants–Appellees.**

**No. 88–1346.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 4, 1988.

Decided Jan. 23, 1989.

Alan F. Curley, Chicago, Ill., for plaintiff-appellant.

Michael H. Mairano, Douglas C. Felder, Chicago, Ill., for defendants-appellees.

Before CUMMINGS, MANION and KANNE, Circuit Judges.

CUMMINGS, Circuit Judge.

Plaintiff appeals from the district court's dismissal of its claims and denial of post-judgment motions to reconsider and extend the time for filing an appeal. We do not reach the merits of the dismissal since the plaintiff failed to file a timely notice of appeal from the district court's judgment dismissing the case. Accordingly, the facts are stated summarily.

The claims in this case revolve around an alleged breach of a construction agreement between plaintiff Parke–Chapley Construction Company ("Parke–Chapley") and defendant Craftech Building Systems, Inc. ("Craftech").[1] Craftech was in the business of constructing prefabricated homes for residential developers including defendant Autumn Chase Partnership.[2] Parke–Chapley was hired by Craftech to perform finishing construction services on a residential development known as the Autumn Chase Development pursuant to an oral agreement with Craftech entered into on behalf of plaintiff by defendant Thomas F. Cherrington, its construction manager. Without reducing the construction agreement to writing, Cherrington caused Parke–Chapley to incur unauthorized expenses incident to performance of the oral contract. Eventually, Craftech induced Cherrington to leave the employ of Parke–Chapley to become the general contractor for Autumn Chase Partnership on the Autumn Chase Development. Prior to leaving, Cherrington allegedly stole various items of personal property and billing statements, preventing Parke–Chapley from billing Craftech as well as other clients for the services performed, and induced other employees to leave Parke–Chapley for employment with the defendant Autumn Chase Partnership. As a result of the defendants' conduct, Parke–Chapley was unable to collect from Craftech, suffering financial hardship and loss of other clients and employees. Plaintiff brought this suit alleging violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq., as well as pendent state law claims. The maximum amount of damages sought in the six-count first amended complaint was $100,000 compensatory damages and $1,000,000 exemplary damages.

On October 6, 1987, Judge Plunkett granted defendants' motions to dismiss the RICO claims for failure to state a claim and the pendent state law claims for lack of subject matter jurisdiction. Judgment was accordingly entered on October 8, 1987. Plaintiff subsequently filed a motion for reconsideration on November 5, 1987, which was denied on February 3, 1988, and a motion for an extension of time for filing notice of appeal on December 3, 1987, which was denied on February 5, 1988.

A notice of appeal in a civil suit must be filed within thirty days of the entry of judgment. Federal Rule of Appellate Procedure ("FRAP") 4(a)(1). Plaintiff could have filed a notice of an appeal at any time before November 9, 1987. However, it did not file this appeal until February 12, 1988, well beyond the period allowed by FRAP 4(a)(1).

■ The timely filing of a notice of appeal is mandatory and jurisdictional.

---

1. Peter Kaiser, an officer of defendant Craftech, is also named as a defendant. Transam Development Corporation, a real estate development corporation, was named as a defendant in the first amended complaint but was dismissed by stipulation on May 14, 1987.

2. Also named as defendants are Autumn Chase Partnership's general partners, Suco, Ltd., TDP Corporation, and Streamwood Development Group, Ltd. and Thomas D. Philipsborn and Kenneth A. Rawson, shareholders and officers of Streamwood Development. The final defendant is Thomas F. Cherrington who was plaintiff's construction manager.

*Browder v. Director, Illinois Dept. of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521. In spite of the untimely appeal to this Court, plaintiff contends that we may review the district court's dismissal on the ground that the district court abused its discretion in failing to grant plaintiff an extension of time in which to file a notice of appeal. Plaintiff claims that FRAP 4(a)(5) compels an extension of time for filing a notice of appeal based on a showing of "excusable neglect or good cause"[3] when counsel has committed a good faith misconstruction of the Federal Rules of Civil Procedure ("FRCP") or interpreted the comments of the district court judge to imply that filing a motion to reconsider would toll the time period for filing an appeal.

If a notice of appeal is not filed within thirty days following the entry of judgment by the district court, FRAP 4(a)(5) allows a party to request an extension of time to file an appeal if such a request is filed not later than thirty days after expiration of the period allowed for appeal. If granted, the motion expands the period for an appeal up to the later of thirty days from the expiration of the original filing period or ten days from entry of the order granting the motion to extend. Given that the district court's judgment was entered on October 8, 1987, plaintiff had until December 9, 1987, to file such a motion.

Plaintiff's extension motion was initially stamped "Received" by the district court on December 3, 1987, then "Filed" on December 18, 1987, and finally "Docketed" on December 21, 1988. Defendants argue that it was not within the discretion of the district judge to grant plaintiff's FRAP 4(a)(5) motion because it was not timely filed. Defendants assert that plaintiff's motion was not filed until December 18, 1987, by singling out one of the three separate dates stamped on the face of plaintiff's motion. In contrast to their position before this Court, defendants had previously admitted that plaintiff's extension motion was timely filed on December 3, 1987, in their letters in opposition to that motion before the district court. R. items 82, 83. It is also abundantly clear from the face of the motion itself that it was timely filed with the district court on December 3, 1987. If there was any further question about the timeliness of plaintiff's motion, defendants should have raised the issue before Judge Plunkett rather than on appeal.

FRAP 4(a)(5) allows a district court to grant a party an extension of time to appeal upon a showing of excusable neglect or good cause. As indicated by the Advisory Committee Notes to FRAP 4(a)(5),[4] if Parke–Chapley's motion had been filed within thirty days of the October 8, 1987, entry of judgment (instead of on December 3), it would have been evaluated under the lesser threshold standard of "good cause".[5] However, when a motion

---

3. FRAP 4(a)(5) provides:

   The district court, upon a showing of excusable neglect or good cause, may extend the time for filing a notice of appeal upon motion filed not later than *30 days after the expiration of the time prescribed by this Rule 4(a)*. Any such motion which is filed before expiration of the prescribed time may be *ex parte* unless the court otherwise requires. Notice of any such motion which is filed after expiration of the prescribed *time shall be given to the other parties in accordance with local rules*. No such extension shall exceed 30 days past such prescribed time or 10 days from the date of entry of the order granting the motion, whichever occurs later.

4. The Committee Notes to FRAP 4(a)(5) provided in relevant part:

   The proposed amended rule expands to some extent the standard for the grant of an extension of time. The present rule requires a

---

"showing of excusable neglect." While this was an appropriate standard in cases in which the motion is made after the time for filing the notice of appeal has run, and remains so, it has never fit exactly the situation in which the appellant seeks an extension before the expiration of the initial time. In such a case "good cause," which is the standard that is applied in the granting of other extensions of time under Rule 26(b) seems to be more appropriate.

5. The Committee Notes indicated that "good cause" under FRAP 4(a)(5) is to be given the same construction as the term is used in FRAP 26 where it is undefined, being left to judicial interpretation. Although the qualitative difference in the discretion afforded a district judge under the "good cause" standard as distinguished from the "excusable neglect" standard also in FRAP 4(a)(5) has not been clarified by

for an extension of time is filed after the expiration of the thirty-day period for appeal following judgment, the appropriate standard for extension of the filing period is "excusable neglect". *Redfield v. Continental Cas. Co.*, 818 F.2d 596, 601 (7th Cir.1987). Three of the four other circuits that have construed FRAP 4(a)(5) are in accord. *Oregon v. Champion Internat. Corp.*, 680 F.2d 1300 (9th Cir.1982), *In re Cosmopolitan Aviation Corp.*, 763 F.2d 507 (2d Cir.1985), certiorari denied, 474 U.S. 1032, 106 S.Ct. 593, 88 L.Ed.2d 573 and *Consolidated Freightways Corp. v. Larson*, 827 F.2d 916 (3rd Cir.1987), certiorari denied, — U.S. ——, 108 S.Ct. 762, 98 L.Ed.2d 775. *Scarpa v. Murphy*, 782 F.2d 300 (1st Cir.1986), alone rejects the ruling in *Champion* and then only in dicta.

Plaintiff asserts that our construction of FRAP 4(a)(5) in *Redfield* was erroneous and that an extension may be granted for either good cause or excusable neglect even if the request is made after the expiration of the thirty-day period following judgment. Parke–Chapley relies on 16 Wright, Miller, Cooper & Gressman, *Federal Practice & Procedure*, § 3950, at 302 (Supp.1987): "The history of this provision may cause some confusion as to the availability of the 'good cause' standard, but it seems clear from the text of the rule that it should be applied to any motion made within the time permitted by Rule 4(a)(5)." However, as decided in *Redfield*, the correct interpretation is reflected by the Advisory Committee's commentary to the rule. The more lenient standard of good cause was added to address requests for extensions of time made prior to the expiration of the thirty-day appeal period. The addition of the good cause standard recognizes that a request made within the thirty-day period should be subject to a lower showing of necessity "since at the time [the attorney] requests the extension, [the attorney] has not neglected to do anything the rules require [the attorney] to do." [9]

J. Moore, W. Taggart & J. Wicker, Moore's *Federal Practice*, ¶ 204.13[1.–1].

Further, a number of changes were made in the rules concurrently with the addition of the good cause standard in 1979. These amendments affected the docketing and management of appeals, making it appropriate to relax the standard for granting an extension of time for the filing of a notice of appeal when the extension is sought before expiration of the initial appeal time. See 9 Moore, *Federal Practice*, ¶ 204.13[1.–1]. In 1979, FRAP 3(e) was added to require the payment of the docket fee to the district court clerk at the time the notice of appeal is filed. Additionally, an appeal may no longer be dismissed within forty days on motion in the district court (*ibid.*), since the appeal is entered on the docket of the court of appeals as soon as the clerk receives the copy of the notice of appeal and docket entries. FRAP 3(d), 12(a). In order to dismiss the appeal, a motion must be filed in the court of appeals and any fees paid then. FRAP 42(b).

The 1979 changes have made it less attractive to file a protective notice of appeal. The more lenient standard of good cause was added to enable the district court to grant extensions of the filing time when such a request is made while time to file remains in order to allow the potential appellant more time to consider the necessity of an appeal. See 9 Moore, *Federal Practice*, ¶ 204.13 [1.–2]. There is no indication from the framers of the appellate rules that the standard for granting extensions after the period for appeals has run was intended to be made correspondingly more lenient. Indeed, if the lesser showing of good cause were to apply to requests for extensions both before and after the thirty-day filing period had expired, the stricter excusable neglect showing would be superfluous. Judge Friendly, a member of the Advisory Committee that drafted the Federal Rules of Appellate Procedure, underscored the necessity to construe FRAP

---

the decisional law, it is apparent from the commentary that the addition of "good cause" was intended to enable district judges to accommodate a wider array of circumstances than under

the stricter "excusable neglect" threshold. See 9 J. Moore, W. Taggart & J. Wicker, Moore's *Federal Practice*, ¶ 204.13[1.–2] n. 25; *Chipser v. Kohlmeyer & Co.*, 600 F.2d 1061 (5th Cir.1979).

4(a)(5) strictly for extensions after the thirty-day filing period has expired:

> To be sure, in most cases where application for an extension of time is made within the second 30–day period provided in FRAP 4(a)(5), the court's sympathy will lie with the applicant: the hardship of being denied an appeal is great ..., while the hardship to the prospective appellee is usually small. But a loose interpretation of "excusable neglect" would convert the 30–day period for appeal provided in FRAP 4(a) into a 60–day one—a result clearly not intended by the Rule's framers.

*In re O.P.M. Leasing Services, Inc.*, 769 F.2d 911, 917 (2d Cir.1985). We decline to disturb this Court's earlier interpretation of FRAP 4(a)(5) in *Redfield* since we find the reasoning to be sound and plaintiff has not directed us to any persuasive authority to the contrary.

Excusable neglect is limited to an occurrence of unusual circumstances in which failure to grant an extension would result in injustice, such as the failure to learn of the entry of judgment. "[F]ailure to learn of the entry of judgment will support a finding of excusable neglect, as will uncontrollable delays in the delivery of mail, unpredictable events that affect the delivery of the notice of appeal to the clerk, unpredictable events that affect the feasibility of appeal, and plausible misconstructions, but not mere ignorance, of the law or rules." *Redfield*, 818 F.2d at 602. A district court's determination of excusable neglect or good cause will not be disturbed on appeal absent an abuse of discretion. *Files v. City of Rockford*, 440 F.2d 811, 816 (7th Cir.1971).

Parke–Chapley argues that excusable neglect exists in this case based on its previous counsel's misconstruction of the rules of procedure and reliance on passing remarks of the district judge regarding the timeliness of plaintiff's motion to reconsider. As a result of former counsel's misinterpretation of the rules, plaintiff filed a FRCP 60(b) motion to reconsider which, if successful, would afford plaintiff complete relief from the final judgment, but does not toll the time period for appeals. Plaintiff did not file a FRCP 59(e) motion for altering or amending the judgment which would toll the appeals period. Plaintiff's confusion was supposedly further compounded by remarks of the district judge which plaintiff's ex-counsel interpreted to indicate that either motion would toll the time period for appeal.

Judge Plunkett denied the FRAP 4(a)(5) motion for an extension of time to file an appeal, citing *Marane v. McDonald's Corporation*, 755 F.2d 106 (7th Cir.1985). He relied on *Marane* in ruling that counsel's unfamiliarity with the Federal Rules of Civil Procedure is no excuse for his or her tardiness in filing an appeal. (App. 31.)

In *Marane*, this Court discussed the interrelationship of FRCP 60(b) and 59(e) with the time period for filing a notice of appeal. Presented with the issue of whether the appeal in *Marane* was timely, the Court was required to determine whether plaintiff's "Motion to Reconsider" was a FRCP 59(e) motion which would toll the time for filing an appeal or a FRCP 60(b) motion which would render the appeal untimely. In holding that the plaintiff's motion to reconsider was untimely as a FRCP 59(e) motion since it was not filed within ten days following entry of judgment by the district court, we held that FRCP 6(b) explicitly precluded extending the time for filing a FRCP 59(e) motion and that unfamiliarity with the Federal Rules of Procedure would not excuse such tardiness. Judge Plunkett relied on this reasoning in holding that the inability of plaintiff's then counsel to interpret FRCP 60(b) properly did not excuse plaintiff for an untimely filing of notice of appeal.

Although *Marane* did not involve a FRAP 4(a)(5) motion, neither Judge Plunkett's reliance on *Marane* nor his denial of plaintiff's motion for an extension of time to file an appeal was an abuse of discretion. While an attorney's good faith misinterpretation of a procedural rule may represent such excusable neglect that it would not necessarily be an abuse of discretion for a district court to grant an extension on this basis, the district court's failure to

grant an extension here was not an abuse of discretion given the clear language of FRCP 60(b), which provides in relevant part:

A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

The Advisory Committee Notes to FRCP 60(b) explain:

Application to the court under this subdivision [b] does not extend the time for taking an appeal, as distinguished from the motion for new trial.

Further, FRAP 4(a)(4) omits FRCP 60(b) motions from the list of district court motions which toll the time period for appeal:

If a timely motion under the Federal Rules of Civil Procedure is filed in the district court by any party: [under Rules 50(b), 52(b) or 59], the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

It is surely implausible that plaintiff's former counsel could have misinterpreted the clear mandate of FRCP 60(b). Consequently, it was clearly within Judge Plunkett's discretion to deny Parke–Chapley relief from the failure to follow the unequivocal language of the Federal Rules of Civil Procedure. "The excusable neglect standard can never be met by a showing of inability or refusal to read and comprehend the plain language of the federal rules." *In re Cosmopolitan Aviation Corp.,* 763 F.2d 507, 515 (2d Cir.1985).

The history of FRAP 4(a)(5) provides further support for a narrow interpretation of the "excusable neglect" standard. The predecessor to FRAP 4(a)(5), FRCP 73, was promulgated in 1937 to provide for the method of appeals from district court judgments. FRCP 73 was amended in 1946 to allow the district court to extend the time period for appeals "upon a showing of excusable neglect based on a failure of a party to learn of the entry of the judgment of the district court." 9 Moore, *Federal Practice,* ¶ 203.24[2]. In 1966, FRCP 73 was further amended to allow the district court to grant an extension for grounds in addition to failure to learn of the judgment.

This change, however, was to be interpreted strictly as indicated by the 1966 Committee Notes to the amended section:

[The amendment] empowers the district court to extend the time upon a showing of excusable neglect of any kind. In view of the ease with which an appeal may be perfected, no reason other than failure to learn of the entry of judgment should ordinarily excuse a party from the requirement that the notice be timely filed. But the district court should have authority to permit the notice to be filed out of time in extraordinary cases where injustice would otherwise result.

9 Moore, *Federal Practice,* ¶ 203.25[3]. In 1979, FRAP 4(a)(5) was amended to include an extension of time based on "good cause" as well as excusable neglect. It is apparent that the predecessor to FRAP 4(a)(5) was initially intended to allow very limited relief to parties. The trend in the amendments indicates an intent to give district court judges more discretion in granting extensions in exceptional circumstances such as the failure to receive notice of the entry of judgment. However, the Advisory Committee's comments to the amendments and the earlier drafts of the rule dictate in favor of a narrowly tailored remedy committed to the discretion of the trial judge who can best assess the equities of the circumstances. With the preceding history in mind, together with the broad latitude to be afforded district judges, Judge Plunkett's decision to deny an extension of time to file an appeal under FRAP 4(a)(5) was not an abuse of his discretion. Further, given the ease with which counsel could have ascertained the effect of a FRCP 60(b) motion, it would not have been an abuse of Judge Plunkett's discretion to deny the motion, even if counsel's conduct were judged under the less strict standard of good cause. See *Denofre v. Transportation Insurance Rating Bureau,* 560 F.2d 859 (7th Cir.1977), interpreting good cause under FRAP 26.

Plaintiff relies on *Feeder Line Towing Serv., Inc. v. Toledo, Peoria & W.R.R. Co.,* 539 F.2d 1107 (7th Cir.1976), for the proposition that attorney error may be sufficient

for excusable neglect. However, the circumstances under which attorney error may be excusable are very rare. Unlike this case, *Feeder Line* involved more than a mere misreading of a procedural rule. There the attorney failed to file a timely notice of appeal due to the clearly conflicting language of two provisions of law: 28 U.S.C. § 2107, which controls the time of filing an appeal in admiralty, and FRAP 4(a). Under 28 U.S.C. § 2072, FRAP 4(a) supersedes Section 2107. This Court affirmed the district court's extension of time in *Feeder Line* but distinguished other inexcusable attorney errors such as preoccupation with other matters, irresponsibility of counsel, tactical decisions and misreading of procedural rules. *Feeder Line,* 539 F.2d at 1109. Counsel's error in this case is akin to those inexcusable mistakes distinguished by the *Feeder Line* court.

Plaintiff alternatively argues that it consciously chose to pursue a FRCP 60(b) motion for its complete relief from judgment, rather than FRCP 59(e) which only offers partial relief. If so, that choice represents a tactical decision from which the district court should not afford plaintiff relief. Plaintiff must accept the strategic decisions of its retained counsel. *Link v. Wabash Railroad Co.,* 370 U.S. 626, 633–634, 82 S.Ct. 1386, 1390–1391, 8 L.Ed.2d 734 *Taylor v. Illinois,* 484 U.S. 400, 108 S.Ct. 646, 657, 98 L.Ed.2d 798. In any event, filing a FRCP 60(b) motion is not mutually exclusive with filing a notice of appeal.

Parke–Chapley also tries to fit its factual situation within the "unique circumstances" exception applied in *Thompson v. Immigration and Naturalization Service,* 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404. *Thompson* adopted the unique circumstances exception made in *Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. 215, 217, 83 S.Ct. 283, 285, 9 L.Ed.2d 261.[6] In *Harris* the petitioner received an extension of the time for filing an appeal within the original time period for appeal by showing "excusable neglect based on failure of a party to learn of the entry of the judgment" and filed a notice of appeal within the extension, but beyond the original period for filing. The district court's determination of excusable neglect was reversed by the court of appeals and the appeal dismissed. The Supreme Court vacated the judgment dismissing the appeal and remanded for hearing on the merits in light of the detrimental reliance of the petitioner on the statements of the district court in extending the deadline.

In *Thompson,* petitioner had filed a post-trial motion with the district court, which, had it been timely, would have postponed the running of the time for filing appeal until a ruling on the motion. Although the motion was untimely, the district court stated that the motion was made "in ample time". Relying on this statement, petitioner did not file a notice of appeal until after the district court disposed of the motion.

Based on the factual circumstances of these two cases, the Supreme Court fashioned the "unique circumstances" exception to the untimely filing of an appeal to avoid "'the obvious great hardship to a party who relies upon the trial judge's finding of "excusable neglect" prior to the expiration of the [applicable period for filing an appeal] and then suffers reversal of the finding ...' after the time for filing the appeal has expired." *Thompson,* 375 U.S. at 386, 84 S.Ct. at 398, citing *Harris.* The doctrine applies when a party does an act which, if properly done, would postpone the deadline for filing of the appeal and the trial court determines that the act has been properly done. When a party relies on the trial court's statement that the act was timely and consequently postpones filing an appeal until after the original appeals period

6. The viability of the "unique circumstances" exception formulated in *Thompson* and *Harris* has been called into doubt by the Supreme Court's decisions in *United States v. Locke,* 471 U.S. 84, 105 S.Ct. 1785, 85 L.Ed.2d 64, *Griggs v. Provident Consumer Discount Co.,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225, and *Browder v. Director, Dept. of Corrections,* 434 U.S. 257, 98 S.Ct. 556, 54 L.Ed.2d 521. See *Bailey v. Sharp,* 782 F.2d 1366 (7th Cir.1986) (*per curiam;* Easterbrook, J., concurring). However, resolution of the scope of the "unique circumstances" doctrine is unnecessary since plaintiff cannot even meet the requirements of the doctrine in its original, broader application.

has run and the court of appeals later reverses the district court's explicit or implicit extension of time, such circumstances are considered sufficient to warrant relief from dismissal of the appeal.

In attempting to position this case within the *Thompson* exception, plaintiff claims reliance on the remarks of Judge Plunkett at the October 6, 1987, hearing dismissing this case. Those relevant remarks are:

JUDGE PLUNKETT: ... I am signing an opinion, which you can get after 4:00 o'clock today, which dismisses Count One because it doesn't in our view state a claim under RICO. The remaining counts are dismissed without prejudice, since they are state court claims. The requests for sanctions by the defendants are denied. You can review that at your leisure and take whatever steps you deem appropriate thereafter, whether it is a motion to reconsider or an appeal or simply bundling up everything and going over to the court down the street. It will be ready at 4:00 o'clock.

(App. 35.)

Plaintiff also relies on the following remarks of Judge Plunkett at the December 1st hearing on the motion to reconsider:

JUDGE PLUNKETT: Well, I have read [the 60(b) motion] rather carefully. It was a difficult case to begin with, and I would like the defendants to give me a response not on timeliness, but on the issues he raises, even though you may feel you are plowing old ground. I would like a detailed response to it.

DEFENDANTS' COUNSEL: You don't want the timeliness issue—

JUDGE PLUNKETT: No. I am much more concerned about being right. He can always go up on this thing, but when it goes up, I want to make sure I am satisfied with it, and he raised enough questions that I want to have another look at it.

(App. 20.) Any statements made by Judge Plunkett at the December 1, 1987, hearing were subsequent to the expiration of the thirty-day filing period. Counsel could not have relied on those statements in failing to file a timely appeal. The unique circumstances rationale is limited to representations made by the district court while time remains for a party to file a notice of appeal, causing the party to refrain from filing an appeal prior to the expiration of the thirty-day period.

Although the quoted statements of Judge Plunkett from the October 6, 1987, hearing were temporally appropriate under the unique circumstances exception, his statements are utterly void of any text on which counsel can rely as an indication that the FRCP 60(b) motion would toll the time period for filing an appeal. Plaintiff feebly asserts that Judge Plunkett's October 6th statement that the plaintiff could file "a motion to reconsider *or* an appeal" (emphasis added) implied that the two avenues for relief were mutually exclusive, and that any motion to reconsider would toll the time to appeal. Such a tortuous interpretation of the district court's remarks cannot be accepted. Had the district court told plaintiff that a motion to reconsider would postpone the running of the filing period for appeals, plaintiff's argument might have merit. But given the innocuous statement of the district court and relative ease (just reading the rules of procedure) with which counsel should have determined the consequences of a FRCP 60(b) motion, any reasonable counsel simply could not have been misled.

■ We now turn to the district court's denial of Parke–Chapley's FRCP 60(b) motion to reconsider. There is appellate jurisdiction to review the disposition of that motion since plaintiff timely filed an appeal therefrom.

■ In seeking the extraordinary relief under FRCP 60(b), plaintiff contends that Judge Plunkett abused his discretion in denying the plaintiff relief from the judgment based on mistake (60(b)(1)) or other reasons justifying relief (60(b)(6)). Plaintiff asserts that there can be no question that the scheme articulated in the complaint constituted a scheme to defraud sufficient to state a cause of action under RICO such that Judge Plunkett committed an error of law in dismissing the complaint and failing to vacate the judgment upon reconsidera-

tion. This Court, however, has held that an appeal or motion for new trial, rather than a FRCP 60(b) motion, is the proper avenue to redress mistakes of law committed by the trial judge, as distinguished from clerical mistakes caused by inadvertence, especially where the FRCP 60(b) motion is filed after the time for appeal has expired. "If plaintiff believed the district court was mistaken as a matter of law in dismissing the original complaint, he should have appealed ... or he might have filed a timely motion under FRCP 59 to vacate the judgment of dismissal and for leave to amend his complaint." *Swam v. United States*, 327 F.2d 431, 433 (7th Cir.1964), certiorari denied, 379 U.S. 852, 85 S.Ct. 98, 13 L.Ed.2d 55; *McKnight v. United States Steel Corp.*, 726 F.2d 333 (7th Cir.1984). The policy behind such a reading of FRCP 60(b) is clear; parties should not be allowed to escape the consequences of their failure to file a timely appeal by addressing questions of law to the trial court for reconsideration. That is the function of appellate courts. If allowed to raise the same questions in a FRCP 60(b) motion that would have been raised in an appeal from the merits, a party would be able to effect an indirect extension of the time for appeal by appealing the FRCP 60(b) motion within thirty days of its disposition. See 7 Moore, *Federal Practice*, ¶ 60.22[3].[7]

Parke–Chapley does not raise any new grounds in either its motion for reconsideration or responsive memorandum, insisting only that Judge Plunkett's characterization of the defendants' conduct as merely "hard competition" is incorrect in light of the following cases decided after Judge Plunk-

ett dismissed the complaint: *Liquid Air Corp. v. Rogers*, 834 F.2d 1297 (7th Cir. 1987), *Carpenter v. United States*, —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275, and *Formax, Inc. v. Hostert*, 841 F.2d 388 (Fed.Cir.1988). Although none of the cited cases worked a significant change in the definition of fraud, a change in law is generally insufficient as "any other reason" justifying relief from the trial court's judgment. See *De Filippis v. United States*, 567 F.2d 341, 343 n. 5 (7th Cir.1977), and cases cited therein. Neither do those three cases represent a reversal of any judgment on which the district court relied in dismissing the complaint which would warrant relief under FRCP 60(b)(5).

An appeal from the denial of a FRCP 60(b) motion does not present for review the judgment from which relief is sought. "Absent exceptional and compelling circumstances, a party will not be granted relief from a judgment under clause (6) [of FRCP 60]: even though relief from the judgment might have been obtained had an appeal been taken...." 7 Moore, *Federal Practice*, ¶ 60.27[1]. Plaintiff's appeal from the district court's denial of Parke–Chapley's FRCP 60(b) motion attempts to escape the consequences of its former counsel's misinterpretation of the Federal Rules of Appellate and Civil Procedure through a *de facto* rehashing of the merits before this Court while presenting no acceptable collateral reasons for finding that Judge Plunkett abused his discretion in denying that motion.

The district court's judgment is affirmed.

---

7. Most circuits have adopted a similarly narrow standard for relief based on judicial error by limiting relief to errors due to judicial inadvertence or by requiring the FRCP 60(b) motion to be filed within the thirty-day appeals period: *Silk v. Sandoval*, 435 F.2d 1266 (1st Cir.1971), certiorari denied, 402 U.S. 1012, 91 S.Ct. 2189, 29 L.Ed.2d 435 (judicial error should be corrected by FRCP 59 motion or appeal); *Fox v. Brewer*, 620 F.2d 177 (8th Cir.1980) (relief for judicial error limited to judicial inadvertence); *Tarkington v. United States*, 222 F.2d 358 (2d Cir.1955) (FRCP 60(b) motion allowed where theory on which district court relied in ruling on merits of case was reversed); *Byrd v. Hunt Tool Ship-*

*yards, Inc.*, 650 F.2d 44 (5th Cir.1981) (correction of judicial errors allowed if motion is made, or the court acts *sua sponte*, within the appeals period); *Gila River Ranch, Inc. v. United States*, 368 F.2d 354 (9th Cir.1966) (relief allowed for errors of law which are apparent); *D.C. Federation of Civic Associations v. Volpe*, 520 F.2d 451 (D.C.Cir.1975) (relief allowed for reconsideration of order which is inconsistent with intervening appellate court decision if motion made within appeals period). But see *Security Mutual Casualty Co. v. Century Casualty Co.*, 621 F.2d 1062 (10th Cir.1980) (relief allowed if motion is made within a reasonable time). See 7 Moore, *Federal Practice*, ¶ 60.22[3].